A nonresident who had sold a large interest in a foreign railroad company had on deposit the proceeds of the sale in a New York trust company, where it remained for 14 months prior to his death. The funds were carried on the books of the trust company as "deposits in trust," and the company paid him a certain interest thereon, subject to his right to draw not more than $100,000 except on two days' notice. The depositor had been trying to invest the deposit, but had failed to do so, having been in continuous bad health, and the deposit being to the extent of nearly $5,000,000. *Held*, that it was not property within the state subject to the transfer tax.

In the matter of the transfer tax on the estate of Timothy B. Blackstone, deceased. Decedent died in 1900 in Chicago, Ill., being a resident of such city. In 1899 he had deposited with a trust company of New York City the sum of $4,881,556.72, and had on deposit $10,000. The property on his death was assessed by the appraiser at the sum of $4,553,609.58. From such appraisement an appeal was taken on the ground that he was not a resident of the state, and left no property in the state; that the property in possession of the trust company and bank was only transitory property, not the subject of transfer tax; and that the property had been duly assessed in Illinois. Assessment denied.

Edward W. Sheldon, for executor.
Julius Offenbach, for city comptroller.

FITZGERALD, S. The decedent, a nonresident, died in May, 1900, leaving nearly $5,000,000 with the United States Trust Company, and over $10,000 due him on an account with a firm of bankers in this city. The deposit with the trust company arose under the following circumstances: The decedent had been for many years the president and a large stockholder in an Illinois railroad company. In March, 1899, an agreement was entered into for the purchase of this stock by a syndicate, which sought to obtain a controlling interest in the railroad. In pursuance of this agreement, the decedent joined with other stockholders in the sale of his shares. The trust company was made the depositary of the stock to be pur-

chased, and was authorized, upon receiving the certificates, duly indorsed, to pay the agreed price therefor. Decedent communicated with the trust company, inquiring whether, in case he sold, he might leave the proceeds with it; that he was at a loss to know how safely to invest these proceeds, and might wish to deposit a considerable sum for several months. The trust company replied that it would receive such proceeds, hold them subject to his order and allow interest thereon at a specified rate, but if he would require more than $100,000 he should not draw upon the trust company except upon two days' notice. These terms were acceded to, and on the 29th day of March, 1899, his stock certificates were delivered to the trust company, who made a book transfer of the purchase price from its accounts with the purchasing syndicate to a new account in decedent's name, entitled "Deposits in Trust." No certificate of deposit nor pass book was issued, and the only evidence of the deposit was this book entry and the correspondence stated. Up to the time of his death the decedent had withdrawn about $200,000. The appellant alleges that it was decedent's fixed intention to leave this balance with the trust company only temporarily and pending its investment; that owing to his ill-health, which was continuous and progressive from the date of the deposit until his death, he was unable to carry out his intention. On several occasions he expressed disappointment at his failure, and complained that he was suffering great pecuniary loss in consequence. In Re Leopold's Estate, 35 Misc. Rep. 369, 71 N. Y. Supp. 1032, I had occasion to pass upon the taxability of a deposit made under somewhat similar circumstances; and I there held that where a decedent had deposited, three days prior to his death, a sum of money to the credit of a syndicate formed for the purchase of stock, which purchase was completed within a month succeeding his death, the property was only transitorily here and was not liable to taxation under the transfer tax law. In the present case, while the property remained here for more than a year, the proof shows that the money realized upon the sale of the securities was of great magnitude; that the reason why it was not removed from the state sooner was because of the difficulties experienced in making new investments and the ill health of the owner. I can see no difference in principle between the two cases, and, upon the authority of that case and of the cases cited in the memorandum handed down in that case, I sustain the appeal.

Appeal sustained.